15055

JOHNSON v. JOHNSON

(8 S. E. (2d), 351)

*Mr. S. Henry Edmonds,* for appellant,

*Mr. Paul M. Macmillan,* for respondent,

April 3, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

In a suit for divorce brought by the plaintiff, Dorothy N. Johnson, against the defendant, Emmett Johnson, Jr., in the Circuit Court for the Fourth Judicial Circuit, Duval County, in the State of Florida, in which proceeding both parties appeared, a final decree of divorce was entered on April 1, 1939. This decree, among other things, ordered the defendant to pay to the plaintiff a monthly installment of alimony in the sum of fifty dollars, for her benefit and for the support of her minor child by the defendant, such sum to be paid on the first day of each and every month, beginning with the month of April, 1939.

The present action was commenced by the plaintiff against the defendant in the Circuit Court for Charleston County, in which county the defendant now resides. After setting up the final equity decree for alimony rendered in the State of Florida, she alleged that the defendant failed to pay certain portions of two monthly installments which became due and payable prior to the institution of this action. The plaintiff prays for judgment for the amount of accrued unpaid alimony, and for all future monthly installments as they become due in accordance with the provisions of the foreign decree; for a reasonable counsel fee, and further that the decree of the Florida Court for alimony be established here as a foreign judgment, to be enforced by appropriate equitable remedies as is usual in such cases.

The defendant served notice of a motion for an order requiring plaintiff to state separately the cause of action on the judgment, and her cause of action for attorney's fees. Reserving his rights under this motion he served his answer, in which he alleges that he has been unable to pay the amount of alimony in arrears for the reason that he has not had the means to do so. He denies the right of plaintiff to counsel fees, and admits the remaining allegations of the complaint.

Following the filing of these papers, the plaintiff served notice of a motion for an order docketing the case on Calendar 2, and referring the cause to a Master in equity. The matter was heard by the lower Court upon the two motions referred to, resulting in an order refusing the plaintiff's motion and granting that of the defendant. The plaintiff has appealed.

The first question presented is this: In an action brought on a final equity decree for alimony rendered in another state, should the Courts of this State by equitable remedies enforce a judgment based on such decree?

The question before us has never been passed upon by this Court. The decisions in other jurisdictions are not in harmony. We have undertaken to care-

fully review these decisions and determine what we think would be the better rule to announce as the law in our State. This being a case of novel impression, we are of course at liberty to adopt that rule which in our judgment best conforms to the principles of equity and which will tend to the furtherance of justice. *Ezell v. Ritholz,* 188 S. C., 39, 198 S. E., 419.

A number of Courts have adopted the view that alimony due under a decree of a foreign Court is merely a debt, collectible only by execution upon a judgment recovered locally upon the foreign decree, and, the remedy at law for its enforcement being complete and adequate, equity has no jurisdiction to undertake its enforcement by contempt or other equitable relief. This rule, in whole or in part, is in effect supported by cases from the States of Massachusetts, Michigan, New Jersey, New York, and the District of Columbia. Cases from these states, and cases holding to the contrary, are referred to and treated very fully in annotations appearing in 97 A. L. R., 1197, and 109 A. L. R., 652:

On the other hand there is considerable authority supporting the proposition that a decree for alimony represents more than a debt; that its basis is the obligation of a husband to support his wife and children, which is a matter of public concern, whether the cause of action arises in the state where the decree is rendered or in another state to which the parties have removed; that the urgency for its effective enforcement is equally as great in one state as in the other; and that, therefore, it should be enforced by the same remedies as are applicable to domestic decrees for alimony. In this view the Courts of one state will enforce a foreign decree for alimony, or, more accurately speaking, a local judgment based on a foreign decree for alimony, by equitable remedies, as by contempt proceedings against the defendant for not complying with the judgment of the Court, etc., as is customary in the enforcement of

local decrees for alimony. 17 Am. Jur., Section 767, page 582.

In *Shibley v. Shibley*, 181 Wash., 166, 42 P. (2d), 446, 447, 97 A. L. R., 1191, it was held that accrued installments of alimony under a California decree of divorce might be enforced in Washington by a judgment enforcible as a decree in equity, namely, by contempt proceedings. The Court said that this rule would be adopted, not because of the dictates of the full faith and credit provision, but because, "as a matter of public concern and equitable power, the enforcement in (Washington) of such decrees for alimony and support money should not depend solely upon ordinary execution," but should be carried out by means of the same remedies as are applicable to like decrees rendered in local Courts. In so holding, the Court follows the rule adopted by the Oregon, Mississippi, California, Connecticut, and Minnesota Courts.

In *Fanchier v. Gammill*, 148 Miss., 723, 114 So., 813, 814, a suit was brought in equity to enforce a decree for alimony rendered in Nevada. A demurrer was sustained to the bill on the ground of lack of jurisdiction because the decree of the Nevada Court amounted to no more than a judgment at law. In reversing the judgment, the Supreme Court, upon reviewing the authorities on the subject, said: "It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the decree for alimony, with the extraordinary power of enforcement by attachment and contempt proceedings, should be established and enforced by our equity court * * * ; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings."

In *Ostrander v. Ostrander,* 190 Minn., 547, 252 N. W., 449, the facts were: Mamie Ostrander, the plaintiff, on December 19, 1929, secured a decree of divorce from the defendant in the Courts of South Dakota, which ordered him to pay the plaintiff for life $75.00 monthly as permanent alimony. Later the parties moved to Minnesota. The defendant failed to discharge the monthly payments, and July 18, 1932, there was due upon the decree $1,350.00. The plaintiff then instituted the Minnesota suit for the purpose, according to the decision above cited, "not to recover that amount as a debt by ordinary judgment and execution, but to compel its payment through whatever power our courts may have, on the equity side, to resort to sequestration, receivership, or even contempt proceedings, against defendant." In holding that the lower Court properly granted her the relief she sought, the Minnesota Supreme Court said: "Because of the nature of defendant's obligation and its origin, the enforcement of his duty is as much in need of attention by sovereign power as though he had remained in South Dakota. Transplantation of the parties from one state to another has not reduced the obligation to the ordinary category of 'a debt of record.' *Contra,* Freeman on Judgments, § 1447. Migration of the parties across a state line has wrought no change in the nature and basis of the obligation. Its purpose remains the payment of alimony needed for the support of a former wife and the child of herself and her debtor. To the ordinary mind, untroubled by legal nuances, the money due from defendant remains alimony wherever they or either may be. We prefer that nontechnical view which regards the substance of the matter as unchanged by mere removal of the debtor across a state line. * * * But we decline debate as to how little we can do for plaintiff and yet comply with the full faith and credit mandate. In view of her plain right, and the need for its enforcement, not only in justice to her and her child, but also to vindicate our system of interstate comity, we prefer only to inquire whether our district Court has ade-

quate power to give plaintiff the remedy which the nature of her claim commends as just."

Reviewing the authorities on both sides of the question, the Court in *Cousineau v. Cousineau,* 155 Or., 184, 63 P. (2d), 897, 109 A. L. R., 643, adhered to the rule adopted by the California, Mississippi, and Washington Courts.

We are in full accord with the reasoning employed by these Courts, which in our opinion is sound and in line with the public policy of this State. And we conclude that a decree for alimony granted by a foreign Court may be established and enforced by and through the equity Courts of this State, and that our equity courts may assume jurisdiction thereof. This conclusion is likewise sustained by the cases of *Sistare v. Sistare,* 218 U. S., 1, 30 S. Ct., 682, 54 L. Ed., 905, 28 L. R. A. (N. S.), 1068, 20 Ann. Cas., 1061; and *Barber v. Barber,* 21 How., 582, 16 L. Ed., 226.

We held in *Scheper v. Scheper,* 125 S. C., 89, 118 S. E., 178, that a foreign judgment in a divorce action rendered by a competent Court having jurisdiction of the parties and the subject-matter is entitled under the full faith and credit clause to such force and effect in South Carolina Courts as may properly be accorded the judgment of another state under the rules governing the extra-territorial effect of such judgments.

We are not dealing here with the divorce decree as such, but with a decree for alimony, which the pleadings admit to be a final one. The question of the divorce is not at all involved in this action. This suit was instituted solely for the purpose of enforcing the payment of alimony duly awarded to the wife for the support of herself and her child.

While divorces from the bonds of matrimony are not allowed in this State (Constitution, 1895, Article 17, Section 3), our Courts for many years, commencing with the case of *Smith v. Smith,* 1897, 51 S. C., 379, 29 S. E., 227, granted to a wife in a proper case, tem-

porary and permanent alimony. As was said in *Armstrong v. Armstrong,* 185 S. C., 518, 194 S. E., 640, 641; "This salutary principle has been consistently and uniformly recognized."

We think that the lower Court misconceived the holding in *Alexander v. Alexander,* 164 S. C., 466, 162 S. E., 437, 82 A. L. R., 719, upon which its order seems to be based.

In the *Alexander case* two causes of action were alleged in the complaint, first, for a judgment against the defendant for accrued installments of alimony under a decree of a Maryland Court, together with reasonable attorney's fees; and, second, to have the decree of the Maryland Court adopted and entered as the judgment of the Circuit Court in South Carolina. Judgment was rendered in favor of the plaintiff on the first cause of action. A demurrer by the defendant to the second cause of action was sustained by the Circuit Court. However, no appeal was taken from the action of the lower Court in sustaining the demurrer, and therefore the questions raised thereby were not properly before this Court. There was no discussion in the *Alexander case,* nor was the question raised as to the method of enforcing the payment of the judgment therein rendered.

The Courts of equity of this State have ample power to grant the relief sought by the plaintiff in this cause. To conclude that because a wife was awarded alimony in another State, the Courts of this State will not aid her in its collection, when if the award had been made regularly in this State they would do so, would have little to commend it. Such a view disregards the whole purpose of awarding alimony or support money to a wife and child. The need is not affected by the place of award. The assertion of the right in a different state cannot change the nature and basis of the obligation.

The Court below concluded that the decree for alimony rendered by the Florida Court was not final. The complaint does not disclose the provisions of the Florida law except

to allege that the decree under consideration is a final one, and this is admitted by the answer.

In our opinion the decree should be treated as final as to accrued and past-due installments. With reference to past-due installments, we held, in *Alexander v. Alexander, supra,* that a decree for alimony will, in the absence of proof to the contrary, be presumed to be final as to accrued installments.

Nor can we agree with the lower Court that the complaint in this action states two causes of action, and therefore should be separately stated. It is clearly a suit in equity, and the claim for attorney's fees is merely incidental in connection with the main cause.

Since the Circuit Court did not pass upon the question of whether or not the plaintiff is entitled to recover attorney's fees, it would not be proper for us to pass upon that issue.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS concur.