## GUERCIA v. GUERCIA.
### No. 2957.

Court of Civil Appeals of Texas. Waco.
April 12, 1951.

Rehearing Denied May 10, 1951.
Writ of Error Refused July 25, 1951.
See 241 S.W.2d 297.

John McGlasson, Waco, for appellant.

David G. Copeland, Winthrop Seley, Waco, for appellee.

TIREY, Justice.

This is an appeal from an order of the district court dismissing plaintiff's application for relief for lack of jurisdiction. A statement is necessary.

Margaret Guercia, a feme sole and a resident of Trumbull County, Ohio, filed an application in the district court of McLennan County in which she styled herself as movant and in which she alleged that she was a citizen of Trumbull County, Ohio, and asked that Samuel Guercia, formerly of Ohio but now a resident citizen of McLennan County, Texas, be notified to appear and show cause why he should not be held in contempt for failure to obey an order of the Common Pleas Court of Trumbull County, Ohio, made at the April, 1946, term of said court, and attached a certified copy of said order and marked it Exhibit "A" and made it a part of her motion. She alleged substantially that Samuel Guercia, the respondent, is in arrears in making the payments provided for in said order; that respondent appeared and submitted himself to the jurisdiction of said court by consenting to the entry of said judgment, and that thereafter he came to the State of Texas and became a resident of McLennan County, Texas, and removed himself from the jurisdiction of said court, and that the said respondent, after coming to Texas, defaulted in the payment of the sums of money provided for by said Ohio Court, and that by reason thereof he is in contempt of said court for failure to obey the orders of payment provided for in said decree, and that movant has no way of asking the Ohio Court to hold the respondent in contempt except through a court in whose jurisdiction said respondent now resides and where this motion is now filed. The movant further petitioned the District Court of McLennan County to give full force, faith and credit to the Common Pleas Court of Trumbull County (a court of record of a sister state) and asked said court (as an act of comity) to require the respondent to appear and show cause why he should not be held in contempt of said order, and asked that an order be made holding respondent in contempt. The movant prayed for such relief. The motion complied substantially with Rule 308–A, Texas Rules of Civil Procedure.

The decree of the Ohio Court granted a divorce to the movant from the respondent and awarded to the movant the care, custody, education and control of their minor child. The decree further found that the movant and respondent entered into an agreement on the 30th of April, 1946, wherein they contracted that respondent would pay to the movant for the support and education of their child the sum of $50.00 per month, payable on the 30th day of each and every month until said child attains the age of eighteen years, and that the respondent had made such payments until the date of the decree, August 19, 1946. The decree ratified and approved the contract of the movant and respondent and directed the respondent to pay the sum of $50.00 per month on the 30th of each month thereafter for the support of said minor child until the further order of that court. The decree is properly certified to by the clerk of the Common Pleas Court. Movant has also attached an affidavit bearing date, 22nd of April, 1950, to her pleading and marked it Exhibit "B", which sets out that at the time the affidavit was made respondent was delinquent in his payments in the sum of $801.60.

The respondent seasonably filed plea to the jurisdiction of the district court of McLennan County and as grounds therefor averred that said court is without jurisdiction to hear movant's motion because it is grounded on an original action based on a foreign judgment; that no citation has been issued nor served on the respondent, and that notice of said motion came to respondent only through a clerk's order to show cause why respondent should not be held in contempt of court; that certified copy of the judgment attached to the motion shows that such judgment is not final, and that there has been no adjudication of a specific amount against respondent on which he is delinquent; that no cause of action recognized by our district court is shown, and that our district court has no authority to enforce contempt orders of another court.

Appellant says: "There is only one point to be decided upon this appeal and that is whether or not the courts of Texas will, through its equitable powers, enforce a support order made by a court of competent jurisdiction of a sister state * * *."

This exact question has not been passed upon by our Texas courts so far as we have been able to find. It is true that our courts have held that a foreign decree for alimony (and/or support for a minor) can be sued on and given effect in Texas under the full faith and credit clause of the Federal Constitution, Article 4, § 1. Our Supreme Court in Criteser v. Gaffey, Tex.Com.App., 222 S.W. 193, followed the rule announced by the Supreme Court of the United States in the case of Sistare v. Sistare, 1910, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905, 28 L.R. A., N.S., 1068. See also Caples v. Caples, 5 Cir., 47 F.2d 225 (from Western Dist. of Texas), certiorari denied 284 U.S. 630, 52 S.Ct. 13, 76 L.Ed. 537. See also Stout v. Stout, Tex.Civ.App., 214 S.W.2d 891 (writ ref.). See also collation of authorities in 15 Tex.Jur. p. 646, sec. 150, and Texas Digest, Divorce, In each of the Texas cases cited, a suit had been filed to establish the debt evidenced by judgment of a court in a sister state. In none of the cases had the plaintiff presented the question of asking the court to give the relief provided for in Rule 308–A, T.R.C.P., nor Art. 2217, Vernon's Ann.Civ.Stats. So the question here presented is: Can the holder of a judgment of a court in a sister state which provides for support of a minor child (the payments being in default) come into a district court in Texas and invoke the provisions of Rule 308–A aforesaid (or its equitable powers) without first having sued the judgment debtor and established such debt against him as provided for under our procedure? Appellant bases her right to such relief on the reasons and authorities cited in an article entitled "Equitable Enforcement of Foreign Alimony and Support Orders," published in the Texas Bar Journal in February, 1950. This comprehensive and excellent article says the questions at issue are: "(1) Is the remedy at law adequate to enforce foreign alimony and support orders? (2) Is extradition an effective remedy to enforce an alimony and

support order? (3) Are the courts of one state required, under the 'full faith and credit clause,' to grant equitable enforcement to orders of other states for alimony and support? (4) Should sound public policy and reasons of comity lead the states to go beyond the bare requirements of the 'full faith and credit clause' in granting equitable enforcement to alimony decrees and support orders of other states?" The article then points out why questions (1) and (2) above quoted are inadequate. Suffice it to say that the argument there presented is that the remedy at law is inadequate because it is seldom used in support cases when the defendant is in his home state, and it is obvious that the alimony provided for the wife and the support orders for the minor children require immediate action, and that the wife and her minor children cannot wait for the remedies of execution, etc., to obtain money from the husband and father who is unwilling to obey such orders and in such instances would take the delays that are necessarily involved in levying writs of execution and garnishment and permit the maintenance and support of his wife and children to be upon the community, if he were not faced with contempt proceedings. It is clear that the effective and only speedy remedy for an unwilling father to abide by such orders fixed by the court is by punishment for contempt. Needless to say, where the father has defaulted and left the state and taken up his residence in a sister state, the delays incident to extradition in bringing the father back to abide by the support orders entered against him render more ineffective the purpose of the orders fixed for the payment of alimony and support for the minor children. The article further asserts: "* * * that both for reasons of public policy and comity the states should go beyond the constitutional requirements in granting equitable enforcement to support orders. And it is further submitted that this is the modern trend." The article then says that Mississippi was the first state to follow the ruling in Barber v. Barber, 21 How. 582, 16 L.Ed. 226, and recognized the social need of enforcing foreign decrees and orders for support with equitable remedies, and cites the case of Fanchier v. Gammill, 1927, 148 Miss. 723, 114 So. 813. At page 737 of 148 Miss., at page 814 of 114 So. we find this statement: "It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the decree for alimony, with the extraordinary power of enforcement by attachment and contempt proceedings, should be established and enforced by our equity court, which has full and sole jurisdiction of all matters of divorce and alimony; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings. Thus, as we view it, to so hold would be to disregard the 'full faith and credit' clause of the federal law, which we interpret to mean that the judgment, with its peculiar right of enforcement, as one for alimony, should be established and enforced by the equity courts of our state in the same manner, and to the same extent, as it could have been enforced by our court if originally obtained in our state."

The Supreme Court of the State of Minnesota, in Ostrander v. Ostrander, 190 Minn. 547, 252 N.W. 449, opinion written 1934, applied to a South Dakota alimony and support order its own statute granting equitable remedies for the enforcement of the same, and gave as its reasons therefor that comity between states and the public policy of the state of Minnesota required such interpretation of the Minnesota statute, irrespective of whether the full faith and credit clause of the Federal Constitution applied. Such court in Holten v. Holten, 153 Minn. 346, 190 N.W. 542, 544, 41 A.L.R. 1415, said in part: "It would be a reproach to our system of legal administration if one could escape from the operation of a judicial decree by going into another state".

The Supreme Court of Washington State in Shibley v. Shibley, 181 Wash. 166, 42 P.2d 446, 447, 97 A.L.R. 1191, held that the plaintiff was entitled to equitable enforcement of a California judgment, and the Court gave as one of its reasons therefor: "We adopt this procedure, not on account of the rule of comity enjoyed by the full faith and credit clause of the Federal Constitution, but because, as a matter of public concern and equitable power, the enforcement in this state of such decrees for alimony and support money should not depend solely upon ordinary execution".

The Supreme Court of the State of Connecticut has held that the right exists to enforce, equitably, a New York decree, even though no statutory authority exists for such proceeding. See German v. German, 122 Conn. 155, 188 A. 429.

The Appellate Court of the State of Illinois, in Rule v. Rule, 313 Ill.App. 108, 39 N.E.2d 379, enforced a decree entered by a court of Nevada by equitable remedies because of judicial determination and not because of any statutory provisions.

The Supreme Court of Florida, in McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511, held that regardless of the scope of the full faith and credit clause, the Chancellor should assume jurisdiction and enforce the decree with equitable remedies. This opinion also stated that the doctrine applied by the Supreme Court of Mississippi in Franchier v. Gammill, supra, was the law of Florida.

The Supreme Court of Virginia in McKeel v. McKeel, 185 Va. 108, 37 S.E.2d 746, 749, in discussing a similar matter arising in the State of Florida, held in effect that a Florida decree requiring the payment of alimony and support of a child was final, even though it contained a reservation as to modification, which reservation, under the Florida rulings, would be applicable only to future installments. The court, in discussing the matter, said: "But even though the courts of Virginia may not be compelled to do so under the full faith and credit clause of the Federal Constitution, upon principles of comity they may establish as their own decree, a foreign decree for future payments of alimony, with the same force and effect as if it had been entered in Virginia, provided, of course, the foreign decree violates no public policy of Virginia." The State of Tennessee has also followed this same doctrine. See Thones v. Thones, 185 Tenn. 124, 203 S.W.2d 597; Hall v. Jordan, 190 Tenn. 1, 227 S.W.2d 35. The same rule has been applied in South Carolina in Johnson v. Johnson, 194 S.C. 115, 8 S.E.2d 351; also in North Dakota in Weldy v. Weldy, 74 N.D. 165, 20 N.W.2d 583; also in Oklahoma in Miller v. Miller, 186 Okl. 566, 99 P.2d 515; also in Iowa in Matson v. Matson, 186 Iowa 607, 173 N.W. 127. In short, the above rule has been applied in the States of California, Connecticut, Florida, Illinois, Minnesota Mississippi, Oklahoma, Oregon, South Carolina, Virginia, Washington and Tennessee.

So we come back to the question before us, and that is: Will the Texas courts grant equitable relief to a citizen of a sister state who has a valid and enforceable judgment for support for a minor, against a former citizen of that state now residing within the jurisdiction of the Texas courts, said defendant having become delinquent in the payment of such orders? Stated differently: Will the courts of Texas follow, literally and fully, the broad doctrine announced by the Supreme Court of the United States in Sistare v. Sistare, supra, [218 U.S. 1, 30 S.Ct. 690], wherein the court said: " * * * if the judgment be an enforceable judgment in the state where rendered, the duty to give effect to it in another state clearly results from the full faith and credit clause, although the modes of procedure to enforce the collection may not be the same in both states." This court feels that it is its duty to follow the Supreme Court, unless the foreign decree violates the public policy of the State of Texas. That our Texas courts have followed this doctrine in part is fully illustrated by the Texas cases cited. These cases show that it is a simple process to obtain a judgment for debt on a judgment previously rendered in a sister state for alimony and support orders where such payments are

delinquent (notwithstanding the fact that our state makes no provision for alimony for the wife after divorce is granted, yet in those states where alimony is awarded after divorce is granted and the decree becomes final and the payments therein provided for have accrued and become delinquent, our courts have held that such judgments to such extent were final judgments and such judgments can be sued on in Texas under the full faith and credit clause of the Federal Constitution. See Texas cases previously cited). So, the next question that arises is: Will the Texas courts make available Rule 308-A, T.R. C.P. (or its equitable powers) to the holders of judgments in our sister states, which judgments provide for support orders for the children against the fathers who have disobeyed the decrees of such court? We think so. This court believes that since it is the father's legal duty to support his minor children under the express provisions of our statutes, and since such duty cannot be discharged by flight from one state, or one jurisdiction, to another, our view is that the public policy of the State of Texas demands that the defendant's obligation (while residing in the State of Texas) to support his minor children in the State of Ohio be performed as fully as if the defendant had incurred such obligation in our state.

Since our courts have followed the Supreme Court of the United States in Sistare v. Sistare, supra, to the extent that under the full faith and credit clause of our Constitution, our courts will, after due notice and proof that such judgment for debt was actually entered in a court of competent jurisdiction in a sister state and is still an outstanding obligation against the judgment debtor, permit the holder of a foreign judgment to establish such debt and judgment in our courts, we think that our courts should make available the provisions of Rule 308-A, T.R.C.P. (or its equitable powers) to the holders of judgments in sister states providing for support orders for minor children against a defendant who has disobeyed such decree, where such debtor has become a citizen of this state. It is our view that since all writs necessary for the proper enforcement of a judgment are available to the holder of a foreign judgment after it has been established as a debt in our courts, there is more reason (supported by a sound public policy plus comity between states) for our courts to make available the provisions of Rule 308-A, supra (or its equitable powers), to the holder of such judgment for support for a minor child upon a finding of fact that such defendant father has defaulted in the payment of the support order therein provided.

We think that Rule 308-A, as it now exists, if followed substantially, is broad enough to afford such relief. In the case at bar the defendant had notice to come into court and show cause why contempt proceedings should not be entered against him because of his failure to obey the decree of the Ohio court entered against him for the support of his minor child, and the burden was on the plaintiff to establish the validity of the judgment of the court of Ohio and the amount accrued thereunder and that defendant had disobeyed the order and defaulted in the payments. We see no valid reason why the trial court in Texas should not proceed with such hearing, and, after hearing the evidence adduced, if the trial court is satisfied that such judgment had been entered against the defendant by a court of competent jurisdiction and that defendant had disobeyed the decree and defaulted in the payments accrued, then in such event the Texas court should enforce the judgment of the Ohio court to the extent of the delinquent payments by orders as in other cases of civil contempt as provided for in Rule 308-A, supra. Under the above application of Rule 308-A, the Texas district court would have the same information were the defendant before him in a suit to have such judgment and debt established against him. Such an application of Rule 308-A would not deny any legal right to the defendant, but, on the contrary, he would have his day in court and his defenses, if any he had, would be available to him in the same manner as if he had been sued for the purpose of having the amount of the debt established against him.

Appellee says that this position is in conflict with the express holding of our Supreme Court in Ex Parte Gonzalez, 111 Tex. 399, 238 S.W. 635, 636, in which our court announced the general rule as applied to district courts in Texas as follows: "* * * one court in no case is authorized to punish contempts of another court." The same rule is annouced in Ex Parte Depew, 119 Tex. 63, 24 S.W.2d 813, and Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, points 16 and 17. We do not share such view. First of all, our Supreme Court was dealing with contempt proceedings of courts of our state. In such cases all the writs necessary for the proper enforcement of a judgment are available to the court that rendered the judgment. This being true, our Supreme Court has justly and wisely held that the party applying for writs of enforcement shall go back to the court that rendered the judgment for such writs. Certainly the court that entered the judgment would be in the best position to determine whether the party applying for the relief was entitled to the writ. Moreover, the writ issued by a Texas court is not limited by boundary lines so long as it is sought to be executed within the boundaries of our state. In the case at bar the writs and processes of a court in the State of Ohio cannot reach across its boundary lines into the State of Texas, so why should not the writs and processes of the courts of Texas of similar jurisdiction be available to holders of judgments in courts of a sister state (and in this instance the State of Ohio) for the enforcement of decrees against the father who has disobeyed the order of the court of Ohio fixing the support for his minor child and who has sought relief from the effect of such orders by becoming a resident of the State of Texas?

It follows that we believe the judgment of the trial court dismissing this application should be reversed and the cause remanded, and the trial court directed to proceed to a trial of the cause in a manner not inconsistent with the views here stated.

Accordingly, the judgment of the trial court is reversed and the cause is remanded with instructions.